## APPEAL OF U. N. ROBERTS CO.

Docket No. 1270.    Submitted August 10, 1925.    Decided November 4, 1925.

*John E. McClure* and *J. R. Little, Esqs.*, for the taxpayer.
*A. H. Fast, Esq.*, for the Commissioner.

Before MARQUETTE and MORRIS.

This appeal is from the determination of deficiencies in income and profits taxes for the year 1918 in the amount of $9,036.37 and an overassessment for 1919 of $814.07. The only question is whether the taxpayer and the Gordon-Van Tine Co. were affiliated during the years 1918 and 1919.

A stipulation was signed by the parties on April 17, 1925, but was not submitted to the Board until July 7, 1925, at the hearing.

The deposition of a witness, Edward C. Roberts, taken in Yreka, Calif., on April 17, 1925, was filed with the Board on May 3, 1925.

Depositions of four other witnesses, taken in Davenport, Iowa, on May 11, 12, and 13, 1925, were filed with the Board on June 15, 1925.

The evidence disclosed by these depositions conflicts with facts agreed to in the stipulation, that "the invested capital of the Gordon-Van Tine Co. for 1918 and 1919 was $250,000," and that the Gordon-Van Tine Co. had capital stock "of $250,000 fully paid up."

Neither party has suggested a repudiation of the stipulation. The counsel for both parties who signed the stipulation were different from counsel who represented the parties at the taking of the depositions.

### FINDINGS OF FACT.

The taxpayer is an Iowa corporation with principal office in Davenport. It was organized in 1893 and thereafter engaged in the business of manufacturing and selling at wholesale lumber and building materials, such as sash, doors, blinds, and similar articles. The Commissioner conceded that the taxpayer was affiliated during 1918 and 1919 with the Goodfellow Lumber Co.

In 1906 the taxpayer was bound by agreement with other manufacturers and wholesalers not to sell its products to retailers. In the latter part of 1906 the taxpayer devised the name " Gordon-Van Tine Co." and under that name sold its products to retailers. The name was combined from the middle names of Horace Gordon Roberts and Harry Van Tine Scott, both of whom were stockholders and officers of the taxpayer.

In April, 1907, the Gordon-Van Tine Co. was incorporated with an authorized capital stock of $250,000, of which stock to the par value of $249,500 was issued on April 27, 1907, represented by certificate No. 6, in the name of the taxpayer, and $500 to individuals to qualify them as directors. The taxpayer delivered its check for $250,000 to the Gordon-Van Tine Co. for the stock received, and the Gordon-Van Tine Co., on the same day, delivered a check to the taxpayer for $250,000 and charged it with a loan, but took therefor no note or other evidence of indebtedness. On December 30, 1909, the taxpayer delivered its check to the Gordon-Van Tine Co. for $249,500, and the loan account of the taxpayer was reduced by that amount. On December 31, 1909, the Gordon-Van Tine Co. acquired, as treasury stock, the $249,500 of stock standing in the name of the taxpayer, and a check was delivered to the taxpayer in that amount. The cashbook of the Gordon Van-Tine Co. showed that the cash on hand at the close of business was:

| | |
|---|---|
| December 29, 1909 | $2, 549. 35 |
| December 30, 1909 | 252, 959. 74 |
| December 31, 1909 | 3, 459. 74 |

The stub of certifiate No. 6 contained the notation, " Cancelled and bought back and put in the Treasury, December 31, '09." The back of that certificate bore no indorsement.

On December 31, 1909, certificate No. 7 was issued by the Gordon-Van Tine Co. for 2,495 shares of stock to Edward C. Roberts. The cash book contained the entry, " Treasury stock account $249,500.

Sale of 2,495 shares of Gordon-Van Tine Co. stock to E. C. Roberts." Under date of December 31, 1909, the cash book also showed, " E. C. Roberts' loan account, $249,500. For cash loaned to E. C. Roberts." The Gordon-Van Tine Co. did not have cash on hand sufficient to loan E. C. Roberts $249,500, unless it had issued the stock as aforesaid. No note was received from E. C. Roberts for the loan. The transaction was carried out by E. C. Roberts delivering his check for $249,500 to the Gordon-Van Tine Co. and he either received back the same check indorsed by the Gordon-Van Tine Co., or the check was put through a bank simultaneously with the check of the Gordon-Van Tine Co. to E. C. Roberts for the loan. No checks or bank statements were submitted in evidence.

The stub of certificate No. 7 bore the notation, " January 3, 1910. Notice has been received from the U. N. Roberts Co. of a claim of purchase of this stock. (Signed) W. J. Hobson, Secretary." The certificate had written across the face, " Cancelled by issue of certificate No. 11." On the back was the following:

For value received, I hereby sell and assign to The U. N. Roberts Company, 2,495 shares of stock represented in the within certificate and do hereby appoint and authorize K. Spelletich as my attorney in fact to make the necessary transfer upon the books of said Company. Witness my hand this 7th day of May, A. D. 1923. (Signed) Edward C. Roberts, in presence of (Signed) Horace C. Roberts.

Certificate No. 11 was issued May 7, 1923, to the U. N. Roberts Co.

The cash book of Gordon-Van Tine Co. showed, under date of May 7, 1923, an entry of cash received in the amount of $249,500, the entry being " Loan account, E. C. Roberts," and the explanation, " In full payment." Under the same date there was an entry in the cash book of disbursements of $249,500 payable to the U. N. Roberts Co., with the explanation " Gordon-Van Tine Co. of Iowa investment," and a notation in red pencil " Loan account."

From December 31, 1909, to May 7, 1923, Edward C. Roberts held the 2,495 shares of stock in the Gordon-Van Tine Co. for the U. N. Roberts Co.

No actual cash was *bona fide* paid in for the stock of the Gordon-Van Tine Co. No tangible or intangible property having an actual cash value was paid in for the stock of the Gordon-Van Tine Co.

The Gordon-Van Tine Co. had no income during the years 1918 and 1919. Its officers and directors were the same persons who served as officers and directors of the taxpayer. It occupied the same offices, for which it paid no rent to the taxpayer. It solicited orders from retailers for the sale of goods manufactured or sold by the taxpayer. It bought goods from no one but the taxpayer. Shipments were made by the taxpayer in the name of the Gordon-Van Tine Co. Purchasers were billed in the name of the latter and

money received was paid over in full to the taxpayer by the Gordon-Van Tine Co. with no deduction for commissions, profits, or other remuneration to the Gordon-Van Tine Co. All expenses of the latter, including taxes, salaries, advertising, which amounted to over $50,000 each year, printing of catalogues, and all other items connected with the name Gordon-Van Tine Co., were paid directly by the taxpayer and in no instance by the Gordon-Van Tine Co.

The taxpayer and the Gordon-Van Tine Co. were affiliated corporations during the years 1918 and 1919.

### DECISION.

The deficiency should be computed in accordance with the foregoing findings of fact. Final determination will be settled on seven days' notice, under Rule 50.